COMPANY-EMPLOYEE RELATIONSHIP

AGREEMENT made this _21_ day of _2009_, 2009, between FIBERTECH, INC, an Indiana Corporation having its principal offices at 2701 W. 1100 S., Huntingburg, IN 47542, (hereinafter referred to as "COMPANY"), and ALAN-MICHAEL GIRARD as EMPLOYEE.

In consideration of my employment and continuing employment at this time by the COMPANY and for value received, I agree with the COMPANY as follows:

1. EMPLOYEE agrees to be employed by COMPANY on a full-time basis and agrees to use his best efforts to perform his job to the best of his abilities. EMPLOYEE will not work for any other business or on his own while employed by COMPANY.

2. Salary and benefits of EMPLOYEE will be as agreed to by the parties from time to time AND STARTING From The agreed employee package

3. I agree that all information concerning the COMPANY and its business developed by me or acquired by me from others during the course of my employment, except information which is or becomes generally available to the public, shall be the exclusive property of the COMPANY and will not be disclosed by me to any person except in connection with the performance of my authorized duties or as otherwise expressly authorized by the COMPANY. Such information shall include but not be limited to: manufacturing and repair processes, product and service designs, business plans, marketing plans, financial data, customer lists, programs, systems, formats, screen designs and input and output specifications, inclusive of documentation.

4. In consideration of both the payments made to EMPLOYEE under this Agreement, as well as the wide access COMPANY grants to EMPLOYEE to review and become familiar with COMPANY's business, including certain valuable trade secrets, and in view of other consideration, EMPLOYEE hereby covenants and agrees as part of and ancillary to this Agreement, that EMPLOYEE, for a reasonable period of time during and after termination of this Agreement, shall not for any reason directly or indirectly, by any means or device whatsoever, for himself or on behalf of, or in conjunction with any person, partnership or corporation do any one or more of the following:

    (a) induce, entice, or hire or attempt to hire or employ any employee of COMPANY; or

(b) compete with COMPANY or solicit any customers of COMPANY in the products and services in the pallet board, slave pallets and plastic container repair processes or related business provided by COMPANY for a reasonable period of time and in a reasonable geographical area.

EMPLOYEE and COMPANY hereby expressly agree that a "reasonable period of time" as used within the above Subsection (4) shall be five (5) years.

EMPLOYEE and COMPANY hereby expressly agree that a reasonable geographical area as used within the above Subsection (4) shall be all fifty (50) states of the United States of America.

COMPANY and EMPLOYEE agree that the covenant set forth in section (4) shall accrue to the benefit of COMPANY, irrespective of the reason for termination of this Agreement and the corresponding employment relationship created herein, or EMPLOYEE's performance hereunder.

In connection with the limited protection afforded COMPANY by the ancillary covenants contained within the above Section (4), EMPLOYEE recognizes that COMPANY's need for the covenants is based on the following:

(a) COMPANY has expended and will continue to expend substantial time, money, and effort in developing (i) equipment and processes utilized in the plastic industry in which the designs, plans, manuals, and specifications are valuable trade secrets, (ii) a valuable list of customers and information about their technical problems and needs, purchasing and renting habits, idiosyncrasies and internal purchasing and renting procedures;

(b) EMPLOYEE will in the course of his employment, be personally entrusted with and exposed to COMPANY's trade secrets;

(c) COMPANY, during the term of this Agreement and after its termination, will be engaged in the highly competitive plastic equipment and services

industry in which many firms including COMPANY compete;

(d) COMPANY sells, rents and/or provides services related to its products throughout the United States;

(e) COMPANY, pursuant to acquiring certain patents, technology and associated trade secrets and know-how, will further develop a worldwide plastic business;

(f) EMPLOYEE could, after having access to COMPANY's financial records, contracts, patents, technology and associated trade secrets and know-how, perform his obligations under this Agreement, and receiving further training by and experience with COMPANY, and after reviewing COMPANY's trade secrets, become a competitor; and

(g) COMPANY will suffer great loss and irreparable harm if EMPLOYEE were to terminate his employment and thereafter enter directly or indirectly, into competition with COMPANY in the pallet/board, slave pallets and plastic container repair processes and related businesses.

5. I understand that this agreement will remain in full force and effect following my termination of my employment for any reason.

6. I understand that in the event of a breach or threatened breach of any of the covenants contained in this agreement, the COMPANY may not have an adequate remedy at law and the COMPANY shall therefore be entitled to obtain injunctive relief, in addition to any other remedies it may have.

7. I recognize that this agreement constitutes the entire understanding between the parties with respect to this subject matter and cannot be altered or amended except by a signed written instrument.

8. I understand and agree that nothing contained herein shall be construed to be a contract of employment for any term of years, nor as conferring upon the employee the right to

continue to be employed by the Company in his present capacity or in any capacity.

9. I understand that this agreement shall be governed by and construed according to the laws of the State of Indiana and that any litigation arising out of this agreement shall be brought in the Supreme Court of the State of Indiana, or the United States District Court for the Southern District of Indiana.

_____
EMPLOYEE SIGNATURE

_____
EMPLOYEE PRINTED NAME

w/d 1) Starting pay will be: $88,000⁰⁰

w/d 2) Vacation To be 3 weeks To start

w/d 3) Severence To be 1 year Effective

Alan-Michael Girard
1121 Ashview Drive
Madison, Ohio 44057
(440) 479-3455

January 9, 2009

Mr. Bill Scott
President/Owner
Fibertech
2701 W. 1100 S.
Huntingburg, Indiana 47542

Dear Bill:

Thank you for allowing me the opportunity to meet with you this week. This interview reaffirmed my decision that I would very much like to become a part of the Fibertech team.

In addition to experiencing an enjoyable and informative interview, I came away feeling genuinely enthusiastic about the position and the person you are looking for. The decision of whom to hire is always an important, but difficult, one. I am glad that you felt comfortable with me, as I did you.

I feel confident that I will not only meet, but I will exceed your expectations. I eagerly anticipate my first day of work with Fibertech.

With that said, you have asked me to provide a salary package that is amicable to both of us. As per a previous discussion, my package with MOD is exactly: $104,012.00 per year, a company car, a fleet fuel card, 100% reimbursement on travel, family medical and severance package upon termination, however, traveling out of and working from your home office can reduce personal expenses and provide a tax savings.

I want to prove to you that I will bring in business or at the very least generate many, many request for quotations. The old saying; you can lead a horse to water, but... comes to mind, but with your overheads and labor rates, I believe we should be very successful.

My proposal is this: $85,000.00 per year base salary, a company credit card to purchase the following: basic travel expenses, company business traveling fuel (not for personal needs), meals, etc. while on the road, and not to be used for purchases such as lawn tractors (hopefully in hindsight you chuckled at that one... kind of). I will use my own vehicle to help save you money. Comparable medical is satisfactory. A severance package of $25,000.00 in the event that you are not happy or satisfied with

the growth of Fibertech as a result of my tenured employment, however, I do not think you will be dissatisfied. Any other profits or non-profits I will leave entirely up to you.

One question, does Fibertech have a base company life insurance plan?

I apologize that I cannot present this letter in person as I had hoped. I just got back from Tennessee late last night and discussed with my wife today.

If you have any questions, please let me know at your convenience. Thank you again have a nice weekend.

Best Regards,


Alan M. Girard